**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| JERMEL COLEMAN, | : | |
| | : | Civil No. 04-1477 (FLW) |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| JONATHAN C. MINER, WARDEN, | : | |
| F.C.I. FAIRTON, | : | |
| | : | |
| Respondent. | : | |

---

**APPEARANCES:**

JERMEL COLEMAN, Petitioner pro se
#08876-084
F.C.I. Fairton
Highway 698, P.O. Box 420
Fairton, New Jersey 08320

CHRISTOPHER J. CHRISTIE, United States Attorney
PAUL A. BLAINE, Assistant U.S. Attorney
United States Attorney's Office
Camden Federal Bldg. And U.S. Courthouse
401 Market Street, P.O. Box 2098
Camden, New Jersey 08101
Counsel for Respondent

**WOLFSON, District Judge**

This matter is before the Court on petitioner Jermel
Coleman's ("Coleman") application for habeas corpus relief under
28 U.S.C. § 2241. Coleman challenges the Bureau of Prisons'
("BOP") calculation of his federal sentence with respect to pre-
custody credits. The respondent answered the petition on or
about July 6, 2004. The Court has reviewed all documents

submitted and, for reasons now discussed, will deny Coleman's
petition for relief.

I.   PROCEDURAL BACKGROUND

Coleman is presently in custody at F.C.I. Fairton in
Fairton, New Jersey, serving a 63 month prison sentence, as
imposed by the United States District Court for the Western
District of Virginia on May 1, 2003, for Coleman's convictions on
charges of possession of a firearm after being convicted of a
felony offense and possession of marijuana.  The federal offense
date was March 28, 2001.  Coleman's projected release date,
subject to good conduct credit earned, is October 17, 2007.

A.   Coleman's Federal Sentence

On March 28, 2001, Coleman was stopped by state authorities
for traffic violations.  His driver's license bore the name of
"Javon T. Monroe".  The officers noticed a marijuana "blunt
roach" in plain view in petitioner's car ashtray.  Coleman was
searched incident to his arrest, and the officers seized a loaded
.45 caliber semi-automatic handgun, $312 in U.S. currency, and
2.5 grams of marijuana.  It was also learned that Coleman had a
1999 conviction in New Jersey state court for conspiracy to
possess with the intent to distribute cocaine, a felony offense.
Coleman had other various warrants on state charges that were
outstanding at the time of the March 28, 2001 traffic stop.

On August 16, 2002, Coleman was charged in federal court in the Western District of Virginia on numerous charges.  He pled guilty on February 6, 2003, to possession of marijuana and to being a felon in possession of a firearm.  The federal court sentenced Coleman on April 28, 2003, to a concurrent 63 month prison term to be followed by 36 months of supervised release. The federal sentence was also made concurrent with any undischarged state sentence.

B.  Coleman's State Sentences

Coleman was charged on multiple state offenses as a result of the March 28, 2001 arrest.  He also had pre-existing state charges that were unresolved.  On April 9, 2001, Coleman was sentenced on these various state charges as follows:

1.  Driving with a suspended license (offense date February 5, 2000) - 90 days.

2.  Contempt of court (offense date December 5, 2000) - 30 days.

3.  Failure to appear in court (offense date March 21, 2001) - 60 days.

On April 19, 2001, Coleman was sentenced on a separate offense of failure to appear in court (offense date March 28, 2001).  He was given 30 days incarceration, with 28 days suspended pending one year of good behavior.

3

While serving the above-mentioned sentences, Coleman was sentenced on May 10, 2001 on state charges emanating from the March 28, 2001 traffic stop, as follows:

1.  Carrying a concealed weapon - 30 days

2.  Driving with a suspended license - 90 days

3.  Giving a false report to police - 30 days

4.  Possession of marijuana - 30 days

These sentences were suspended pending two years of good conduct.

On June 15, 2001, Coleman was sentenced to 30 days, suspended pending two years of good conduct, for an escape offense dated December 5, 2000.

Thus, according to the sentence calculation prepared by the Commonwealth of Virginia for all of the above referenced state sentences, Coleman served the custodial terms as indicated with respect to the sentences imposed in April 2001, from March 28, 2001 (the date he was arrested) through June 18, 2001, when Coleman was released from state custody.

Thereafter, on May 8, 2002, Coleman was again arrested by state authorities for failure to appear in court.  On June 14, 2002, the 30-day sentence imposed on June 15, 2001 for an escape charge was reinstated.  On January 21, 2003, Coleman was further sentenced as follows:

4

1.  Forging a public document (Offense date March 28, 2001) - five years with all but one year suspended on the first count pending 10 years of good behavior.

2.  Failing to appear in court (offense date November 13, 2001) - 12 months with 5 months suspended pending 10 years good behavior.

On January 30, 2003, Coleman was sentenced to 30 days imprisonment on a capias offense.  Thus, according to the sentence calculation prepared by the Commonwealth of Virginia for the above sentences, which totaled one year and nine months, Coleman was credited with serving these terms beginning on May 8, 2002 and was thereafter released to federal custody on July 10, 2003.  Consequently, Coleman has remained in either state or federal custody from May 8, 2002 through to the present time.[1]

C.  Computation of Coleman's Federal Sentence

As verified by Fernando J. Messer, the Regional Inmate Systems Administrator for the Northeast Regional Office, in his declaration dated June 29, 2004, (hereinafter "Messer Decl."), Coleman's federal sentence began on April 28, 2003, the day it was imposed by the federal court, because Coleman was already in state custody and the Bureau of Prisons ("BOP") had designated

---

[1]  Coleman was in federal custody for 81 days, from February 6 through April 28, 2003, pursuant to a writ of habeas corpus ad prosequendum.  This time corresponds to the dates involving his guilty plea and sentencing on the federal charges.  Coleman was returned to state custody on April 28, 2003.

the state facility as the place for serving Coleman's federal sentence. (Messer Decl., ¶ 16). In accordance with BOP Program Statement 5880.28, the BOP credited Coleman's federal sentence with the time he served in state custody between May 8, 2002 and June 13, 2002, pursuant to Willis v. United States, 438 F.2d 923 (5th Cir. 1971). This period of time represents the time between Coleman's arrest on May 8, 2002, which began his second period of state incarceration, through the day before Coleman began serving the first state sentence imposed on June 14, 2002. All other possible pre-custody federal credit is governed by 18 U.S.C. § 3585. (Messer Decl., ¶¶ 16-18).

## II.  CLAIMS PRESENTED

In his petition, Coleman argues that the BOP refuses to grant credit for the time he served in pre-sentence detention while awaiting trial for those charges in state court pertaining to his March 28, 2001 arrest. It is not entirely clear from the petition the specific dates or periods of time that were allegedly served in pre-sentence detention, which Coleman claims were not credited by the BOP. He attaches his administrative remedy forms, which also fail to clarify the specific time periods for which he seeks to be credited. However, it appears from the response by the Regional Director that Coleman seeks prior custody credit for the period of time from March 28, 2001 (the date he was arrested) through April 27, 2003 (the day before

6

he was released to federal custody).  (December 31, 2003
Response, attached to the Declaration of Roberta M. Truman,
Assistant Regional Counsel, Northeast Regional Office, dated July
1, 2004 ("Truman Decl.")).

The Respondent filed a answer to the petition, with the
relevant administrative record, on July 6, 2004, arguing that
Coleman's petition should be dismissed for failure to exhaust
administrative remedies.  Respondent also argues that the
petition is without merit because the BOP has correctly computed
Coleman's custodial term and because no pre-custody credit is
awardable for time spent in federal custody on a writ of habeas
corpus ad prosequendum where state authorities retained primary
jurisdiction.

III.  <u>ANALYSIS</u>

A.  <u>Standard of Review</u>

Coleman seeks a writ of habeas corpus pursuant to 28 U.S.C.
§ 2241(c)(3).  That section states that the writ will not be
extended to a prisoner unless "he is in custody in violation of
the Constitution or laws or treaties of the United States."  28
U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than
more formal pleadings drafted by lawyers.  <u>See</u> <u>Estelle v. Gamble</u>,
429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520
(1972).  A pro se habeas petition and any supporting submissions

must be construed liberally and with a measure of tolerance.  See
Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v.
Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United
States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert.
denied, 399 U.S. 912 (1970).

B.    Exhaustion of Administrative Remedies

        Respondent contends that Coleman failed to exhaust his
administrative remedies, set forth at 28 U.S.C. § 542.10 et seq.
Coleman did submit an administrative remedy form to the Warden on
November 14, 2003.  On November 26, the Warden responded to the
grievance by asking Coleman to provide the specific dates for
which Coleman was seeking credit.  The response also denied
petitioner's remedy despite the request for further information.
(Truman Decl., Exhibit to ¶ 3).  Rather than respond to the
Warden's request, Coleman filed an appeal to the Regional Office.
On December 31, 2003, the Regional Director denied the appeal.
Coleman did not seek further administrative review. (Truman
Decl., ¶ 3).

        Respondent argues that Coleman's failure to exhaust his
administrative remedies, especially in failing to respond to the
Warden's request for specific dates for which credit was sought,
and for failing to complete administrative review by appealing to
the BOP General Counsel, frustrates the intent of the
administrative review process.  Respondent also contends that

8

Coleman has offered no explanation for his failure to appeal to the BOP General Counsel; nor has he demonstrated actual prejudice to him from the BOP's calculation of his federal sentence necessary to overcome his procedural default.  See Moscato v. Bureau of Prisons, 98 F.3d 757, 760-62 (3d Cir. 1996).

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato, 98 F.3d at 761.  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)

9

(exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Here, it appears that Coleman took some steps in the administrative review process, but failed to appeal the Regional Director's denial decision to the BOP General Counsel as required.  Coleman offers no explanation for this default. Nevertheless, this Court finds that any further effort by Coleman in exhausting his administrative remedies to the General Counsel at this point would be futile.  Any appeal from the Regional Director's decision would be deemed untimely.   Moreover, a sufficient factual record has already been developed with respect to the issue at hand.  The claims and the dates at issue were raised on appeal to the Regional Director and have been denied. Therefore, the factors that typically serve the purposes of the exhaustion requirement have been met substantially, and the Court will review the merits of Coleman's petition rather than dismiss it on this procedural ground.

B.  <u>There Is No Merit to Petitioner's Claim</u>

Coleman seems to suggest that he is entitled to credit for all of the time he spent in state custody between March 28, 2001 and April 27, 2003, because he was in pre-sentence detention for both his state-related crimes and his federal-related offenses. With respect to the state charges, Coleman alleges that he was awaiting trial and sentencing until June 14, 2002, when he was sentenced by the state court to 30 days.  Any time after the 30-day sentence expired would then be considered pre-sentence detention on his federal charges.  This would include the time he was borrowed from state custody to appear for his federal matter from February 14, 2003 to April 14, 2003.

Coleman also contests the BOP's reason for denying credit for time served during the above-mentioned time period, *i.e.*, pursuant to 18 U.S.C. § 3585(b), credit may only be allowed for time that "has not been credited against another sentence".  He points out that the BOP gave him credit for the time served (37 days) pursuant to a state sentence imposed on January 21, 2003, even though that same time was credited on his state sentence. However, this Court notes that this credit was based on <u>Willis v. United States</u>, 438 F.2d 923 (5th Cir. 1971), which specifically allows double crediting for time between the date of arrest and the date of a state court sentence, even though this time might have been credited to the state sentence as well.

11

The U.S. Attorney General has responsibility for computing a federal sentence, including credit for any jail time already served.  United States v. Wilson, 503 U.S. 329, 335-37 (1992); United States v. Brann, 990 F.2d 98, 104 (3d Cir. 1993).  The Attorney General has delegated this responsibility to the BOP pursuant to 28 C.F.R. § 0.96.  See Wilson, 503 U.S. at 335.  In computing a federal sentence, the BOP must make two separate determinations: (1) when the federal sentence commences; and (2) to what extent credit may be awarded for time spent in custody before commencement of the sentence.  See Chambers v. Holland, 920 F. Supp. 618, 621 (M.D. Pa.), aff'd 100 F.3d 946 (3d Cir. 1996).

There are three ways that an inmate can accrue federal jail credit: (1) credit for time spent in custody while actually serving a federal sentence; (2) credit for prior custody under 18 U.S.C. § 3585(b); and (3) credit for time spent in non-federal pre-sentence custody during which the inmate is denied bail because of a federal detainer, commonly referred to as "Willis" credit.  See Willis, 438 F.2d 923; BOP Program Statement 5880.28, *Sentence Computation Manual*.  The first type of credit does not apply in this case.  However, the BOP did apply credit pursuant to the other two bases.

Section 3585(b)[2] allows an inmate to use time served in custody prior to the imposition of a sentence towards the completion of that sentence when the custody was "(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence." This last clause provides that time spent in custody cannot be credited toward a federal sentence if it was used to satisfy a non-federal sentence.  The Supreme Court made clear that inmates are not allowed to "double count" credit.  <u>United States v. Wilson</u>, 503 U.S. 329 (1992).

Here, Coleman's sentence commenced on April 28, 2003, the date he was received in federal custody.  <u>See</u> 18 U.S.C. § 3585(a); <u>Chambers</u>, 920 F. Supp. at 621.  The sentencing court generally ordered that Coleman's federal sentence run concurrent with his imprisonment under any previous sentence.  There was no specific direction with respect to the award of pre-custody credit.  Coleman could only receive credit for time spent in state custody before the commencement of his federal sentence so long as it was consistent with 18 U.S.C. § 3585(b).

_____

[2]  For offenses committed on or after November 1, 1987, as in this case, determinations as to the commencement of a federal sentence and prior custody credit are governed, respectively, by 18 U.S.C. §§ 3585(a) and (b).

13

The record, as provided by the respondent, shows that the BOP designated the non-federal facility in Virginia, in which Coleman was incarcerated at that time, for service of his federal sentence pursuant to 18 U.S.C. §§ 3621(b) and 3585(a). (Messer Decl., ¶ 16). The record also shows that the BOP did not give petitioner prior custody credit, pursuant to § 3585(b), for the time he spent in state custody from March 28, 2001 (the date of his federal offense) to June 18, 2001, when he was released from state custody, but before his federal sentence was imposed, because Coleman received credit for this time as against his state sentence and he was released from state custody before imposition of the federal sentence.[3] (Messer Decl., ¶ 18). Therefore, this Court finds that Coleman is not entitled to receive prior custody credit for the period of March 28, 2001 through June 18, 2001, given the express mandate in 18 U.S.C. § 3585(b).

Moreover, the Court agrees with the BOP's determination that Coleman is not entitled to prior custody credit from the period of June 18, 2001 through May 8, 2002 (when Coleman was arrested on an unrelated state charge), because Coleman was not in state or federal custody during this time.

---

[3] The respondent further argues that the state offenses for which Coleman was confined during this time period were for completely unrelated state offenses, occurring before the date of his federal offense.

14

As reflected above, on May 8, 2002, Coleman was arrested on
an unrelated state charge.  The BOP determined that Coleman was
entitled to 37 days prior custody credit, from May 8, 2002
through June 13, 2002 (the day before he was sentenced on
multiple state sentences), pursuant to Willis.  Again, this Court
does not find the BOP's determination of jail credits to be in
error or unlawful.

The BOP also correctly applied credit from April 28, 2003
(the date Coleman's federal sentence was imposed) through July
10, 2003 (when Coleman was transferred from state to federal
custody), because the BOP had designated the non-federal facility
in Virginia for service of his federal sentence pursuant to 18
U.S.C. §§ 3621(b) and 3585(a).

Consequently, this leaves the time period from June 14, 2002
to April 27, 2003 at issue.  The BOP has not given credit for
this time period because Coleman was receiving credit for this
period of service against other state sentences for unrelated
state offenses.  The Court finds that the BOP correctly denied
jail credit for this period of time consistent with the mandate
under 18 U.S.C. § 3585(b).

Finally, Coleman argues that he should have received credit
for the time that he was in federal custody (from February 6,
2003 through April 28, 2003) pursuant to a writ of habeas corpus
ad prosequendum.  The respondent counters that no pre-custody

15

credit is awardable for this time period because the state authorities retained primary jurisdiction over Coleman, and Coleman was receiving credit against his state sentences during that time period.

A writ of habeas corpus ad prosequendum is generally utilized for the purpose of indicting, prosecuting, and sentencing a defendant who is in state custody.  See Flick v. Blevins, 887 F.2d 778, 781 (7th Cir. 1989), cert. denied, 495 U.S. 934 (1990).  Accord United States v. Jones, 938 F.2d 447, 449 (3d Cir. 1991).  The general rule provides that time spent on an ad prosequendum writ is not time in federal custody because the defendant is merely being borrowed from state authorities, and legally remains in state custody serving the prior state sentence.  See Chambers v. Holland, 920 F. Supp. at 622 (citing cases).  Once the ad prosequendum writ is satisfied, the prisoner must be returned to his primary custodian, which was the state authorities in this instance.

The Tenth Circuit has held, however, that where an inmate has been on loan in federal detention pursuant to an ad prosequendum writ for an extended period of time, then the detention would transmute into federal custody.  Hernandez v. United States Attorney General, 689 F.2d 915, 1075 (10th Cir. 1982).  In Hernandez, the court stated that its holding was fact specific, and was not intended to operate as a per se rule.

16

Nevertheless, a 19 month detention on an ad prosequendum writ constitutes federal custody.  Id.

Here, the general rule clearly applies.  Coleman was loaned to federal authorities for his plea and sentencing for a short period of time, 81 days.  Therefore, the BOP was correct in its computation of Coleman's federal sentence, which precluded credit for the short period of time Coleman was in detention under an ad prosequendum writ.  Moreover, as the respondent points out, this time in detention was credited against his Virginia state sentences, and thus, § 3585(b) also operates to bar prior custody credit for that time against Coleman's federal sentence.

The Court further notes that this is not a case where the sentencing court specifically ordered the award of pre-sentence credits.  Thus, there is no conflict here between the power of the sentencing court to generally order concurrent sentences on the one hand, and the statutory grant of authority to the BOP to calculate pre-custody credits pursuant to 18 U.S.C. § 3585(b), on the other.  Therefore, where Coleman has asked this Court to grant him pre-custody credit towards his federal sentence for time that was already credited to his state sentences, the Court will deny the petition on the grounds that petitioner's request is clearly barred by operation of 18 U.S.C. § 3585(b).  The BOP has correctly computed Coleman's federal sentence and the pre-

custody credits pursuant to the relevant and controlling federal statutory and case law.

IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, the Court denies the petition for a writ of habeas corpus under 28 U.S.C. § 2241.  An appropriate order follows.




 <u>s/Freda L. Wolfson</u>
FREDA L. WOLFSON
United States District Judge

Dated: December 20, 2005

18